The Chancellor.
The question .which lies deepest in (his controversy, is that which respects the original rights of these companies under their respective charters. It is contended by the purchasers .under the Wiffinb mortgage, that the agreement of February 17th, 1836, is .void against them, it being subsequent to that mortgage; and .particularly if the agreement binds the Canal Company -to permit a constant flow of three square feet of water at the ravine; for that such a flow would destroy the canal. It is answered by the Society, that if that agreement is void, then they .claim to be remitted to their original rights under their charter; and that, in .view .of those rights, the Canal Company .are not authorized to .touch or in any way interfere with any of the head waters of the Passaic. To this the Company reply, that the legislature had the power and constitutional right to authorize them to take, for the purposes of the canal, not only the lands and waters of individuals, but even .the lands .and waters of tire Society; and that .the terms of their charter are unlimited in .this respect. If this question shall be presented for discussion in any stage of this contro,versy, it will be the duty of the court to decide it. But certainly, this court would not be asked, at this late day, to grant a preliminary injunction against the .Canal Company, and .suspend their operations till a .question like this should be decided.
As to the right of the Canal Company to drop the waters they bring from Lake Hopatcong into the Rockaway, with the *221 view of taking an equal quantity of water out of the Rockaway on the other side of it, and thus saving the expense of an aqueduct, the question has passed, .sub judien. This court, on two successive applications for an injunction, has refused to act against the Company on a denial of that right.
As to that part of the cross-bill which asks ,a specific performance of the agreement of February 17th, 1836, the counsel for the Society do not contend that in that aspect .of the case the court should grant a .preliminary injunction.
But it is said on the part of the Society, that they do not ask a specific performance,; that the agreement has been performed ; and that the Society ask the interference of the court to prevent the Company from now repudiating it; that is to say, to restrain the Company from preventing the flowing of water from the canal at the ravine, according to the terms of the agreement. This involves several questions. One of these questions, and which was elaborately argued at the bar, that is to say, whether an injunction could issue to restrain the Company from preventing the flow of water from the canal, I do not find it necessary to .consider. The present motions are denied on other grounds.
What is the agreement between the Company and the Society ? The Society claim that it is for a constant flow of three square feet, unqualified by any other rule or consideration. This, the proof now before the court seems to show, would destroy the canal. On the other hand, the extent of damage to the Society by stopping the flow from the canal, is entirely uncertain. The mills might suffer more or less, for a portion of the year, longer or shorter, in dry seasons. Should not the court, under such circumstances, leave the Society to their compensation in damages at law ? Jt is sufficient, for me to say, that under such circumstances I could not grant a preliminary injunction.
But I am not so well satisfied that this agreement calls for a constant flow of any quantity of water, as to be willing to grant ,an injunction on the Society’s bill, if all other difficulties in the way of such injunction were removed; and a doubt, as to the correctness of the Society’s construction of the agreement in .this respect would be sufficient ground for denying the injunc *222 tion asked by them for the purpose of compelling a constant flow.
If the agreement does not call for a constant flow, but only for a flow at such times and in such quantities as to keep the middle canal of the Society in a state to supply twenty-two square feet of water, .should .an injunction to any extent go? Several objections are made to it. First, That the present holders , of the canal, .whether they he-the old Canal Company or a rara avis in t err is, ,(in the language of Mr. Wood,) hold it under a mortgage made prior .to this agreement.
Second, That the Society have not fulfilled their part of the agreement-; but that they permit an .escape, under their embankment, of a quantity of water nearly or quite equal to a flow of ¡three square feet.
Third, That there is ¡no sufficient -evidence that the Society have .not had, during the whole season, water enough, if it were properly husbanded, and their works were kept tight, according .to the agreement, to supply twenty-two square feet for use on the middle canal.
If the agreement does .not call for a constant flow, I am of ■opinion, that .the Society .cannot be allowed to permit such an escape ,of water -as, from the proof .now before the court, it appears there is, and still claim the flow at the ravine provided for :in the agreement. If it is impracticable to prevent such escape, then it is impracticable for -the Society to comply on their part with the terms of the agreement; and the result is simply this, that the Society ai;e -unable to use all the water three times over; which they might be able to do if they could comply with the terms of the agreement.
Again, if there has been any scarcity of water at Paterson this season, beyond what would have .existed independently of the operations of the Canal Company; yet, if that scarcity was produced only by the filling of the enlarged canal, .-and ceased after it was filled, the application for an injunction fails. But it is by no means clear, on the proof that is now before the court, that the filling the canal, this season, did not add to, rather than diminish the flow at Paterson. Indeed, if the filling the canal was calculated to reduce the flow to the falls below the extreme reduction which was the necessary result of so *223 continued and severe a drought, it is difficult to imagine how the season could have passed with so little interruption of the works at Paterson.
Without permitting myself to be drawn further into the questions that may be involved in other prayers of the cross-bill ; it seems to me. there is no sound equitable principle on which the court can grant the prayer for an injunction.
It, is obvious, that in this view of the case, the court cannot dissolve the injunction obtained by the Company.
The Company’s bill charges, that at the time of the breaking of the gate and waste way at the ravine, the water of the Passaic was running over the dam above the falls, made by the Society to divert the water to their works; and the answer does not deny, but admits the charge.
Under these circumstances, it seems to me that a dissolution of the injunction would be a present recognition by the court of the right of the Society to a constant flow at the ravine of three square feet. This, as intimated before, I am not now prepares! to declare.
Both motions are denied.